Rackim Williams,
    Plaintiff    )    C/A No. 2:09-2289-JFA-RSC

VS.    )    **REPORT AND RECOMMENDATION**

Officer Sgt. K. Loyd,
    Defendant

This civil rights action under 42 U.S.C. § 1983[1] (West 1994 & Supp. 1998) brought by a prisoner proceeding pro se and in forma pauperis is before the undersigned United States Magistrate Judge for a report and recommendation on the defendant's motion for summary judgment. 28 U.S.C. § 636(b).

On August 28, 2009, the plaintiff, Rachim Williams, sued Sgt. K. Loyd, a corrections officer in the Special Management Unit (SMU) at Lee Correctional Institution (LCI) where the

---

[1] Section 1983, titled a civil action for deprivation of rights reads in relevant portion:
    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

plaintiff is incarcerated. Plaintiff alleged that the defendant used excessive force in connection with an altercation between them in 2008 in violation of his right to be free of cruel and unusual punishment as guaranteed by the eighth amendment of the constitution. He alleges that he filed a timely Step 1 grievance on July 30, 2008, but was told it was being investigated and that the grievance was not otherwise considered by SCDC nor ever returned to him. He believes not deciding his grievance also violated his constitutional rights. He seeks damages and equitable relief.

On December 22, 2009, the defendant filed a motion for summary judgment with various affidavits. The plaintiff was provided a copy of the motion and on December 29, 2009, was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975). The plaintiff opposed the motion on January 25, 2010. The defendants filed a reply on February 4, 2010. Hence, it appears consideration of the motion is appropriate.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when the record demonstrates that the requirements of Rule 56(c) have been met. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). Summary judgment

2

"should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Where a case is "decided on summary judgment, there have not yet been factual findings by a judge or jury, and [the appellant's] version of events ... differs substantially from [the appellee's,] ... courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the ... motion." <u>Scott v. Harris</u>, 550 U.S. 372, 127 S.Ct. 1769, 1774 (2007) (internal quotation marks and alterations omitted).

Summary judgment is mandated where the party opposing the motion has failed to establish the existence of an element essential to his case, and on which he bears the burden of proof. <u>Id.</u>, 477 U.S. at 322. The party seeking summary judgment must inform the court of the basis for its motion, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party, however, need not offer proof that negates the opponent's claim; rather, as to issues on which the party opposing the motion has the burden of proof at trial, the party seeking summary judgment need only point to an absence of evidence to support the opponent's claim. The party opposing

3

summary judgment must then point to facts evidencing a genuine issue for trial. Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Summary judgment should not be denied merely because the plaintiff raises a "metaphysical doubt" as to the material facts. Mathushita Electrical Industrial Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Likewise, "unsupported speculation is not sufficient to defeat a summary judgment motion." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). If the plaintiff's evidence does not raise a genuine issue as to a material fact, then summary judgment is proper for the defendants. See Anderson, 477 U.S. at 249-50 (where evidence is not significantly probative, then summary judgment is proper). Furthermore, even as to a material fact, an issue is genuine only where the record establishes that the fact-finder could find, by a preponderance of the evidence, that the plaintiff is entitled to judgment in his favor. Id., 477 U.S. at 252.

## FACTS

The facts either undisputed or according to the plaintiff's verified complaint[2] as the non-moving party and all reasonable inferences drawn in favor of the non-moving party are as follow.

---

[2]In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based upon personal knowledge. Williams v. Griffin, 952 F. 2d 820, 823 (4th Cir. 1971)

4

In his verified complaint the plaintiff stated that on July 29, 2008, the plaintiff was in the shower in the prison's SMU. Several correctional officers including the defendant, Sgt. Loyd, were attending to a disturbance where an inmate broke off the sprinkler head in his cell's ceiling. Lt. Davis told Officer King to get all inmates who were in the showers out of the showers. Plaintiff complained to Lt. Davis that he had only just then gotten into the shower. Davis responded by telling the plaintiff and two other inmates that, "when they cut the water off, you are going to have to get out." The defendant and three other officers, King, Micknes, and Lorrick, came into the shower area and the defendant Loyd stood immediately in front to the plaintiff's shower. At that point, Off. Micknes said to the inmates, "Don't get out now." Plaintiff stated that the defendant started "looking at me crazy; I told him, 'All that mean mug don't mean nothing.'"

Then Loyd told Officer King to hold his, Loyd's, handcuffs and to give him the keys to the shower. Loyd opened the shower door and grabbed the plaintiff by the neck and started hitting the plaintiff's face. Plaintiff "swung back and that's when Off. King mace me with top cop 9, and Sgt. Loyd started back hitting me in my face." Officer Micknes exclaimed that Loyd was still hitting the plaintiff, and Off. King told Loyd to stop hitting the plaintiff. Officer King grabbed the plaintiff and took him

back to his cell.

Defendant Loyd affied[3] that after the plaintiff was maced he tried to gain control of the plaintiff "by taking him down to the ground with the least amount of force...during my struggle with the plaintiff to gain control of his struggling, Plaintiff's head struck the floor." Loyd did not notice any "obvious injuries to the plaintiff."

Medical was notified and Plaintiff was seen in his cell by Nurse Thompson who, according to the medical records submitted by the defendant, noted that an officer told her that the plaintiff hit his head while the plaintiff said that the officer hit him while he was in the shower and gassed him. The nurse noted that the plaintiff has a "small scratch" under his right eye, but had no bleeding or need for medical attention. Although the inmate told the nurse that he was sore, the inmate was able to rotate his jaw and open his mouth without any problems. Def. ex. 6, pg. 12.

Plaintiff returned to sick call about two weeks later, on August 15, 2008, with complaints of a puffy right eye, and neck pain from the altercation, as well as a complaint that his "nose was stopped up." It was noted that the plaintiff did have a 3

---

[3] Loyd stated that leading up to the use of force Plaintiff refused to obey orders to come out of the shower, disobeyed Loyd's continued order to "calm down" and "caused a great disturbance in the prison."

6

centimeter scar under his right eye. On September 9, 2008, Plaintiff was seen by medical with complaints of breathing difficulties which Plaintiff attributed to the altercation; he believed that his nose had been broken in the altercation. Plaintiff complained that the area under his right eye was "puffy." Nurse Bowman noted no visible swelling or disfigurement of his nose and no puffy areas were noted under his right eye. Plaintiff's nose was xrayed on September 15, 2008, and no fracture was noted.

The plaintiff was charged with assaulting an SCDC employee and the matter was forwarded to the Disciplinary Hearing Officer (DHO). A hearing into the charge was conducted by DHO Sharon Patterson on August 17, 2008. Officer Patterson found Plaintiff not guilty of the charge and wrote that the "specific factual reasons" for her not guilty finding were the testimony of the accuser and an unspecified witness.

A grievance procedure exists at LCI and on July 30, 2008, the plaintiff filed a step one grievance regarding the defendant's purported assault. See, grievance LCI 2326-09. According to the affidavit of Mary Coleman, Grievance Coordinator for SCDC, the grievance was forwarded to the Division of Investigations due to the nature of the grievance. As of the date of the defendant's motion for summary judgment, the Division of Investigations had not completed its review and in accordance

7

with SCDC Grievance Policy, GA-01.12, Section 15, the grievance was being held in abeyance until such time as the review was completed. Plaintiff was notified of the grievance being held in abeyance on August 4, 2008.

The investigation into the grievance filed by Plaintiff is not yet complete as the Investigator assigned to investigate the allegations of the grievance has not yet filed his investigative synopsis. See Affidavit of Investigator Greer at ¶ 5. The court has not been provided any indication that the status of Plaintiff's grievance has changed. Further, according to Mary Coleman, Plaintiff has not exhausted his administrative remedies because a no decision has yet been rendered on his Step one grievance.

## DISCUSSION

A review of the record and relevant case law indicates that the motion should be denied as to Plaintiff's claim for damages against Loyd in his individual capacity and granted in all other regards.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

As an initial matter, the defendant argues that it has proven its affirmative defense that the plaintiff failed to comply with the Prison Litigation Reform Act's (PLRA) requirement that a prisoner exhaust the available administrative remedies before filing a § 1983 action concerning conditions of his

confinement. 42 U.S.C. § 1997e(a); see also, Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir. 2005) (inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the defendant). However, it appears that the plaintiff has exhausted his available administrative remedies and the action should be allowed to proceed.

The Supreme Court has held that the PLRA "seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) (citing Porter v. Nussle, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)). Accordingly, before a prisoner may proceed with his claims in a federal court, he must first properly exhaust his administrative remedies available through the SCDC grievance policy/process.

Here, the defendant appears to argue that, because at the time it filed its motion, the plaintiff's grievance remains with the Division of Investigations, the Plaintiff's Step 1 grievance had not progressed beyond that point, and no final agency determination had been made with regard to it. In the meantime, however, the defendant seeks to stop the plaintiff from litigating his claim on the grounds that he has failed to exhaust administrative remedies.

The court may take judicial notice of the SCDC grievance process. As noted in Jones v. Kay, No. 07-3480, 2007 WL 4292416 (D.S.C. Dec. 5, 2007), the SCDC grievance policy provides that if, at the institutional level, the response to the grievance exceeds the established time limits, the grievance will automatically proceed to the next level of appeal where the Inmate Grievance Coordinator may respond to the prisoner and resolve his complaint. SCDC Policy GA-01.12 § 13.6. Importantly, SCDC Policy GA-01.12 indicates that, "Under no circumstances will the grievance process exceed 180 days."

At this point, the plaintiff's Grievance has been languishing since August 4, 2008, never having proceeded even to Step Two. Apparently it was forwarded to the Division of Investigations over one and one half years ago; the 180 day limit placed on the grievance process regardless of any circumstance expired over one year ago.

When a prisoner files a grievance and has not received a timely determination, the grievance may be considered exhausted under the PLRA. As the Seventh Circuit has observed: "we refuse to interpret the PLRA 'so narrowly as to ... permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances.'" Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002); see also Boyd v. Con. Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004)

(concluding "administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance"), cert. denied, 544 U.S. 920, 125 S.Ct. 1639 (2005); Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002) ("[W]e agree that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable."); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) (agreeing that administrative remedies are deemed exhausted under the PLRA when prison officials fail to respond to inmate grievances); Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001) ("[O]nce [the prison] failed to respond to [the prisoner's written grievance], no further administrative proceedings were 'available' to him."); Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999) ("A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired.").

As mentioned above, Plaintiff's Step One Grievance was received by SCDC in August 2008, and remains open a year and one half later. Given the facts of this case, and the amount of time that has elapsed, it appears that summary judgment is inappropriate because SCDC interfered with the plaintiff's ability to exhaust his administrative remedies when it failed to comply with its policy and respond to his grievance in a timely

fashion.

## EXCESSIVE FORCE CLAIM

The plaintiff's complaint is that Officer Loyd used constitutionally excessive force in removing him from the shower and taking him to his cell. The eighth amendment prohibits the infliction of cruel and unusual punishment on an individual convicted of a crime. The eighth amendment protects not only the sentence imposed upon an individual, but also the treatment and conditions of prisoners during incarceration. See Shakka v. Smith, 71 F.3d 162, 165 (4th Cir. 1995).

The eighth amendment also prohibits prison officials from using force unnecessarily and wantonly to inflict pain. See Whitley v. Albers, 475 U.S. 312, 319 (1986). In order to determine if the defendant officer used improper force or punishment, the court is to look at the objective nature of the force used, the resulting harm and the subjective intent of the officers. See Hudson, 503 U.S. at 7. The most pertinent inquiry under the subjective prong is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. In making this determination, the court is to balance such factors as the need for the application of force, the relationship between the need and the amount actually applied and the extent of the injury inflicted. See Hudson, 503 U.S. at 7.

Until recently, the Fourth Circuit precedent dictated that in order to prevail on an excessive force claim, a plaintiff must prove more than de minimis injury. See Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994) (overruled); Riley v. Dorton, 115 F.3d 1159, 1166-68 (4th Cir. 1997) (overruled). However, in February 2010, the Supreme Court found that "[i]n requiring what amounts to a showing of significant injury in order to state an excessive force claim, the Fourth Circuit has strayed from the clear holding of this Court in Hudson." Wilkins v. Gaddy, 130 S.Ct. 1175, __ U.S. __, 2010 WL 596513, at 2 (Feb. 22, 2010). The Supreme Court explained that its holding in Hudson did not stand for the proposition that a "certain quantum of injury [needed to be] sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. at 1177 (quoting Hudson, 503 U.S. at 7). Further, the Court opined that requiring a showing of injury would permit any punishment, "no matter how diabolic or inhuman," absent some quantum of injury. Id. at 1178 (quoting Hudson, 503 U.S. at 9). The Court did not want an inmate, who was the victim of excessive force, to lose the ability to pursue an excessive force claim because of "the good fortune to escape without serious injury." Id. The Court did note, however, that the absence of serious injury is not irrelevant. The extent of injury could indicate whether the use of force was thought to be necessary, and it could provide an

13

indication of the amount of force actually applied. Id. at 1180.

Here, the defendant ignores the plaintiff's version of the facts contained in his verified complaint and relies upon his version of the facts exclusively to support his motion for summary judgment. However, as there have not yet been factual findings by a judge or jury, and the plaintiff's version of events differs substantially from the defendant's version, courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the motion." Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 1774 (2007).

Therefore, crediting the plaintiff's version of what occurred, it cannot be said that force was applied in a good-faith effort to maintain or restore discipline. The plaintiff had just gotten into the shower when the disturbance occurred. Officer Davis told the plaintiff that when the water was turned off he was going to have to leave the shower. The defendant came into the shower area and stood immediately in front of the plaintiff's shower. Another officer then ordered the plaintiff and others not to leave the shower at that point. The defendant started looking at the plaintiff in a manner which the plaintiff described as "crazy" and opened the shower door, grabbed the plaintiff by the neck, and started hitting the plaintiff's face. Plaintiff "swung back and that's when Off. King mace me with top cop 9." After the plaintiff was maced the defendant resumed

14

hitting the plaintiff in the face, despite being told to stop by Officer King. Officer King then grabbed the plaintiff and took him back to his cell. The defendant affied that during the struggle the plaintiff's "head struck the floor."

The plaintiff was charged with assaulting an SCDC employee and the matter was forwarded to the Disciplinary Hearing Officer (DHO). A hearing into the charge was conducted by DHO Sharon Patterson on August 17, 2008. Officer Patterson found Plaintiff not guilty of the charge and wrote that the "specific factual reasons" for her not guilty finding were the testimony of the accuser and an unspecified witness. Under these facts, it can not be said that plaintiff was not obeying orders to stsay in the shower when the defendant repeatedly assaulted him with blows to the prisoner's face. If fully credited, a reasonable jury could find the plaintiff's description of the defendant's actions constituted an eighth amendment violation.

The extent of the plaintiff's injuries are in conflict. Plaintiff was seen by medical following the incident and the defendant told a nurse that the plaintiff hit his head while the plaintiff said that the officer hit him while he was in the shower and gassed him. In his complaint the plaintiff indicated that he had "wounds" from the alleged assault, and medical notes document a puffy eye and complaints of breathing difficulties. The nurse's notes indicate that the plaintiff has a "small scratch" under his right eye, but had no bleeding or need for

medical attention. The plaintiff told the nurse that he was sore, but the nurse indicated that the inmate was able to rotate his jaw and open his mouth without any problems. Def. ex. 6, pg. 12.

Plaintiff returned to sick call on August 15, 2008, with complaints of a puffy right eye, and neck pain from the altercation. It was noted that the plaintiff did have a 3 centimeter scar under his right eye. On September 9, 2008, Plaintiff was seen by medical with complaints of breathing difficulties which Plaintiff attributed to the altercation with the defendant. Plaintiff believed that his nose had been broken in the altercation. Nurse Bowman noted no visible swelling or disfigurement of his nose and no puffy areas were noted under his right eye. Nurse Bowman noted no visible swelling or disfigurement of his nose and no puffy areas were noted under his right eye. Plaintiff's nose was xrayed on September 15, 2008, and no fracture was noted. A fact finder must determine the extent of the plaintiff's injuries.

Further since the matter must await determination of the facts now in conflict, qualified immunity as set forth in Harlow v. Fitzgerald, 457 U.S. 800 (1982) and its progeny is inappropriate as well. Therefore the defendant in his individual capacity[4] is not entitled to summary judgment on

---

[4]Plaintiff's claim against the defendant for damages in his official capacity is barred by the eleventh amendment as the

Plaintiff's excessive force claim.

### PLAINTIFF'S CLAIM THAT HIS GRIEVANCE WAS NOT HANDLED PROPERLY

This claim should be dismissed since Plaintiff has no constitutional right of access to a prison grievance system such as the SCDC's grievance systems. Admas v. Rice, 40 F. 3d 72, 75 (4th Cir. 1994) (Constitution creates not entitlement to grievance procedures or access to any such procedure.)

### PLAINTIFF'S PRAYER THAT THE DEFENDANT'S EMPLOYMENT BE TERMINATED

To the extent that the plaintiff seeks to have the defendant terminated from his employment, "[f]ederal courts lack the authority to remove or reassign state employees." Maxon v. Johnson, 488 F. Supp. 1030, 1032 n. 2 (1980). Therefore, such relief is not available in the instant action.

### CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended the defendant's motion for summary judgment be

---

state is the real party in interest. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71, 109 S.Ct. 2304, 105 L.Ed. 2d 45 (1989)

denied as to the excessive force claim against the defendant for damages in his individual capacity and granted in all other respects.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

April 26, 2010